IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>FIRST PENN-PACIFIC LIFE</td><td>*</td><td></td></tr>
<tr><td>INSURANCE COMPANY,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CIVIL NO.: WDQ-05-0444</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>WILLIAM R. EVANS, CHARTERED,</td><td></td><td></td></tr>
<tr><td><em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

First Penn-Pacific Life Insurance Company ("First Penn")
sought to rescind a life insurance policy allegedly procured by
fraud.  Applying Arizona law, Judge Andre M. Davis--then of this
Court--granted summary judgment for defendants William R. Evans,
Chartered and Invotex, Inc. f/k/a Maryland First Financial
Services Corp. (collectively, "Evans").  Evans then sought
attorneys' fees under Arizona law as prevailing parties in a
"contested action arising out of a contract."  Ariz. Rev. Stat.
§ 12-341.01(A) (2008).  The Court denied Evans's petition as
untimely under Local Rule 109.  Pending is Evans's motion to
alter or amend under Rule 59(e) or, in the alternative, to
extend the filing deadline based on excusable neglect.  For the

1

following reasons, Evans's Rule 59(e) motion will be denied, and its motion to extend the filing deadline will be granted.  The petition for attorneys' fees will be denied.

I.   Background

In *First Penn-Pacific Life Insurance Co. v. William R. Evans, Chartered*, 2007 WL 1810707 (D. Md. June 21, 2008), First Penn sought to rescind a life insurance policy ("the Policy") allegedly procured by fraud.  On June 21, 2007, the Court granted summary judgment for Evans because First Penn failed to "contest" the Policy within two years as required by Arizona law and the Policy.  *Id.* at *7; Paper No. 52.[1]

On June 22, 2007, Evans filed a Motion to Alter or Amend Judgment under Rule 59(e), asking the Court to fix the amount payable under the Policy.  Paper No. 54.  On July 6, 2007, First Penn filed a Rule 59(e) motion arguing that the grant of summary

---

[1] The Court's decision turned on the meaning of "contest" under Arizona insurance law.  First Penn was statutorily and contractually obligated to contest the policy on or before February 5, 2000.  First Penn argued that it had contested the policy on October 12, 1999 by sending letters to the insured and his assignee, which gave notice of rescission and tendered a refund of premiums paid on the policy.  Evans argued that contesting the policy required judicial action.  Because First Penn filed its rescission suit after the two-year period, Evans contended that the suit was time-barred.  Describing the issue as one of "first impression under Arizona law," Judge Davis held that it was "very likely" that the Arizona Supreme Court would hold that contesting a policy requires judicial action, not mere notice to affected parties.  *See First Penn*, 2007 WL 1810707, at *1, *7.

judgment erroneously applied Arizona insurance law.  Paper No. 55.  The Court denied both motions on September 4, 2007.  Paper No. 63.

Evans filed a bill of costs and a petition for attorneys' fees on September 18, 2007.  Paper Nos. 64, 65.  On September 28, 2007, First Penn appealed the September 4, 2007 Order denying its Rule 59(e) motion.  Paper No. 66.  On October 12, 2007, Evans filed a cross appeal based on the same Order.  Paper No. 70.  Evans's cross appeal was dismissed on December 3, 2007.  Paper No. 88.

On August 4, 2008, the Court denied Evans's petition for attorneys' fees "without prejudice to its subsequent renewal pending the outcome of the appeal."  Paper No. 93.  On February 26, 2009, the Fourth Circuit affirmed Evans's judgment.  Paper No. 94.

On September 17, 2009, the Court denied Evans's bill of costs.  Paper No. 117.  On October 5, 2009, the Court denied Evans's petition for attorneys' fees as untimely under Local Rule 109.  Paper No. 118.  On October 19, 2009, Evans moved to alter or amend judgment under Rule 59(e) or, in the alternative,

to extend Local Rule 109's deadline based on excusable neglect. Paper No. 120.[2]

## II.  Analysis

A.  Motion to Alter or Amend Judgment under Rule 59(e)

There are three grounds for amending an earlier judgment under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.  *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  Evans argues that the Court's judgment should be amended to accommodate for a change in the law and to correct a clear error in the Court's application of the law.

1.  Intervening Change in Law

Evans argues that a recently-decided Fourth Circuit case, *Cross v. Bragg*, 329 Fed. Appx. 443 (4th Cir. 2009), establishes that a fee petition is timely under Local Rule 109 if filed with 14 days of "entry of judgment" as that term is defined in Fed. R. Civ. P. 54, the so-called "default" rule governing the timing of fee petitions.  First Penn contends that *Cross* does not represent an intervening change in the law because it (1) is

---

[2] Evans's 59(e) motion challenges the Court's denial of its petition for attorneys' fees, not the denial of the bill of costs.

unpublished and (2) did not purport to construe the meaning of "entry of judgment" under Local Rule 109.

Although unpublished decisions are not precedent in the Fourth Circuit, *see, e.g.*, *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 339 (4th Cir. 2009), such decisions are entitled to considerable weight, *see, e.g.*, *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006).  First Penn is correct, however, that *Cross* did not address the issue raised in this case, *i.e.*, whether the 14-day period under Local Rule 109 runs from the entry of the primary judgment (in this case, the grant of summary judgment) or from the denial of a post-trial motion.

In *Cross*, the Fourth Circuit vacated the Court's denial of a petition for attorney's fees based on the Court's interpretation of its own Order denying reconsideration, which established a schedule for briefing on the fee petition.  *See Cross*, 329 Fed. Appx. at 457.  The Court had denied the petition for failure to comply with its Order requiring the memorandum in support of the fee petition to be filed by the deadline in the Order.  *Id*.  In holding that the Court misinterpreted its Order establishing the briefing schedule, the Fourth Circuit noted that the Order was not a "final judgment" in the case--*i.e.*, it was not an Order from which an appeal lay--because it left

several issues unresolved.  *Id*.  The Court's judgment did not
become final until it issued a subsequent reconsideration Order
disposing of the remaining issues.  *Id*.

The Fourth Circuit held that by reading its Order to
require the attorneys' fees memorandum before final judgment,
the Court abused its discretion because it was clear from the
Order that the Court intended to require briefing only after the
judgment had become final.  Citing Fed. R. Civ. P. 54's "default
mechanism," the Fourth Circuit stated that "federal courts
prefer to conduct attorney's fee proceedings after the entry of
final judgment."  Because Local Rule 109 also requires fee
petitions only after "entry of judgment," the court "assume[d] .
. . that it is predicated on the same bases as Rule 54(d)."  The
Fourth Circuit recognized that "[a]rguably, the district court
possessed the authority under Local Rule 109 . . . to direct the
plaintiffs to file their attorney's fee motion and memorandum
prior to the entry of a final judgment."  *Id*.  However, it did
not decide that issue because it found that such a requirement
was not what the Court had intended in its Order.  *Id*.

As First Penn notes, the *Cross* court did not discuss
*Jackson v. Beard*, 828 F.2d 1077 (4th Cir. 1987), in which the
Fourth Circuit construed "entry of judgment" in Local Rule 109's
nearly-identical predecessor rule to mean entry of the primary

6

judgment, not the denial of post-trial motions.  *Jackson*, 828
F.2d at 1078-80.  Nor did the Fourth Circuit consider the first
part of Local Rule 109, which governs the timing of bills of
costs, and which--when read together with the provision
governing petitions for attorneys' fees--makes clear that "entry
of judgment" under Local Rule 109 means entry of the primary
judgment.[3]  *Cross* does not represent an intervening change in the
law.

    2.  Clear Error of Law

    Evans argues that the Court's interpretation of Local Rule
109 renders it inconsistent with Fed. R. Civ. P. 54, under which
"entry of judgment" includes the denial of post-trial motions.
Because Fed. R. Civ. P. 83 requires local rules to be consistent
with the Federal Rules, Evans contends that "entry of judgment"
in Local Rule 109 must be read to include the denial of post-
trial motions.  The Court addressed this argument in its denial
of Evans's petition, and held that its interpretation of Local
Rule 109 was not inconsistent with Rule 54.  As Evans has not

---

[3] *Compare* Local Rule 109.1.a ("Unless provided by L.R. 102.2.c or
otherwise ordered by the Court, a bill of costs shall be filed
within fourteen (14) days of entry of judgment, *or of the entry
of an order denying a motion, filed under Fed. R. Civ. P. 50(b),
52(b) or 59*.") (emphasis added), *with* Local Rule 109.2.a
("Unless otherwise provided by statute, L.R. 109.2.c or
otherwise ordered by the Court, any motion requesting the award
of attorneys' fees must be filed within fourteen (14) days of
the entry of judgment.").

provided any new reason to depart from this holding, the Court will adhere to the reasoning and conclusion in its denial of the petition.

Accordingly, because Evans has not shown an intervening change in the law or a clear error of law, its motion to alter or amend judgment will be denied.

B.  Motion to Extend Time for Filing[4]

Under Fed. R. Civ. P. 6(b):

> When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

The Supreme Court has defined "neglect" as encompassing "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  *See Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.*

---

[4] Rule 6(b) requires that a request to extend a deadline made after the deadline has passed be made by motion.  First Penn argues that because Evans made its request only in its memorandum, the request may not be considered.  Under Fed. R. Civ. P. 1, the Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."  As First Penn has not been prejudiced by Evans's oversight, the Court will treat Evans's request for an extension in its memorandum as a "motion" under Rule 6(b).

*P'Ship*, 507 U.S. 380, 388 (1993).[5]   The Supreme Court has

defined "excusable" as "at bottom an equitable [inquiry], taking

account of all relevant circumstances surrounding the party's

omission." *Id*. at 395.   The relevant circumstances include "the

danger of prejudice to the [nonmovant], the length of the delay

and its potential impact on judicial proceedings, the reason for

the delay . . . and whether the movant acted in good faith.   *Id*.

"Although inadvertence, ignorance of the rules, or mistakes

construing the rules do not usually constitute 'excusable'

neglect, it is clear that "excusable neglect" under Rule 6(b) is

"a somewhat 'elastic concept' and is not limited strictly to

omissions caused by circumstances beyond the control of the

movant."   *Id*. at 392.

"[E]xcusable neglect is not easily demonstrated," *Thompson

v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir.

1996), but Evans has demonstrated it here.   Evans's reason for

its delayed filing was an uncertainty in the law regarding the

meaning of "entry of judgment" under the current version of

Local Rule 109.   Although *Jackson v. Beard* had decided the issue

under Local Rule 109's predecessor, it was unclear what impact,

if any, the enactment of Rule 54 had on Local Rule 109.   Evans

---

[5] Although the Supreme Court defined "neglect" as it was used in
a bankruptcy court rule that was based on Rule 6(b), the Court's
definition has been applied to Rule 6(b). *See, e.g., Dwonzyk v.
Baltimore County*, 328 F. Supp. 2d 572, 577 (D. Md. 2004).

assumed that this Court would apply the definition of judgment in Rule 54--which includes orders denying post-trial motions--to Local Rule 109; had the Court done so its petition would have been timely.  Given the entire text of the Local Rule--which specifically contemplates the filing of post-trial motions--and the fact that Rule 54 allows its timing requirements to be varied by local rules, the Court concluded that *Jackson* was still good precedent.

Evans's delayed filing did not prejudice First Penn or otherwise affect judicial proceedings; First Penn was afforded adequate time to respond, and there is no evidence that the untimely filing altered the course of this litigation or caused First Penn to incur additional costs.  Although First Penn argues that a timely submission would have allowed the attorneys' fee issues to be consolidated with First Penn's appeal, the Court indicated to the parties that it would defer ruling on the fee petition until the appeal was decided.  Thus, consolidation would have been impossible.  Finally, there is no evidence that Evans failed to act in good faith at any point. Evans's attorneys' fee petition will be considered.

C. Evans's Fee Petition

    1. Ariz. Rev. Stat. § 12-341.01(A)[6]

Evans seeks attorneys' fees under Ariz. Rev. Stat. § 12-341.01(A), which states that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."  Given that First Penn sought to rescind an insurance policy allegedly procured by fraud, this case is a "contested action arising out of a contract."  *See Marcus v. Fox*, 723 P.2d 682, 685-86 (Ariz. 1986).  Further, Evans was clearly a "successful party" in that it prevailed on summary judgment on both of First Penn's claims. *See In re Estate of Lamparella*, 109 P.3d 959, 967 (Ariz. Ct. App. 2005).

That a party was successful in an action arising out of a contract is not sufficient for an award of fees.  *Layne v. Transamerica Fin. Servs., Inc.*, 707 P.2d 963, 967 (Ariz. Ct. App. 1985).  "Such an award is discretionary, and there is no presumption that the successful party is entitled to [it]."  *Id*. (*citing Assoc. Indem. Corp. v. Warner*, 694 P.2d 1181, 1183 (Ariz. 1985)).  The party seeking fees has the burden of proving

---

[6] Because this is a diversity case, the right to attorneys' fees is governed by state law.  *See Ranger Constr. Co. v. Prince William County Sch. Board*, 605 F.2d 1298, 1301 (4th Cir. 1979). Arizona law governs the substantive issues in this case.  *See First Penn*, 2007 WL 1810707, at *4.

entitlement to the award.  *Woerth v. City of Flagstaff*, 808 P.2d 297, 304 (Ariz. Ct. App. 1990).

   2. The Warner Factors

   In *Warner*, the Arizona Supreme Court listed six factors meant to guide the exercise of discretion in assessing fee petitions under § 12-341.01(A):

> (1)  The merits of the claim or defense presented by the unsuccessful party;
>
> (2)  Whether the litigation could have been avoided or settled, making the successful party's efforts completely superfluous in achieving the result;
>
> (3)  Whether assessing fees against the unsuccessful party would cause an extreme hardship;
>
> (4)  Whether the successful party prevailed with respect to all relief sought;
>
> (5)  The novelty of the legal question presented, and whether such claim or defense had previously been adjudicated in this jurisdiction; and
>
> (6)  Whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees.

*Warner*, 694 P.2d at 1184.  The list is non-exclusive, *Tavilla v. Employer Mut. Cas. Ins. Co.*, 2008 WL 2154800, at *8 (Ariz. Ct. App. May 20, 2008), and although a court should consider all the factors, *Wilcox v. Waldman*, 744 P.2d 444, 450 (Ariz. 1987), "the weight given to any one factor is within the Court's discre-tion," *Moedt v. Gen. Motors. Co.*, 60 P.2d 240, 245 (Ariz. Ct.

App. 2002).[7]  Further, the fact that a court finds that more factors favor the award does not necessarily mean the award must be granted.  *See Rsui Idem. Co. v. Assoc. Elec. & Gas Ins. Servs.*, 2008 WL 6811837, at *1-*2 (D. Ariz. Mar. 7, 2008).

### a.  Merits of First Penn's claims

Courts addressing this factor are concerned not with unsuccessful claims,[8] but with meritless or frivolous claims.[9]

---

[7] Evans argues that the factors relating to the merits of the action carry more weight than others. This argument disregards *Moedt*, and is contradicted by the numerous cases in which courts have relied heavily--and in some cases *exclusively*--on the other factors. *See, e.g.*, *Kufahl v. Johnston*, 2010 WL 134259, *1-*2 (Ariz. Ct. App. 2010) (affirming denial of fees based on the petitioner's failure to attempt to settle); *Biltmore Evaluation & Treatment Servs. v. RTS NOW, LLC*, 2009 WL 223293, *3-*4 (Ariz. Ct. App. 2009) (affirming denial of fees based on petitioner's not having prevailed on all relief sought even though other factors weighed in favor of fees); *Tri-Star Theme Builders, Inc./PCL Constr. Servs. v. Hawkeye-Security Ins. Co.*, 653 F. Supp. 2d 973, 982 (D. Ariz. 2009) (denying petition based solely on the novelty of the issues in the suit); *Layne*, 707 P.2d at 967 (affirming denial on same basis); *Rowland v. Great States Ins. Co.*, 20 P.3d 1158, 1168 (Ariz. Ct. App. 2001) (same); *Great W. Bank & Trust Co. v. Pima Sav. & Loan Ass'n*, 718 P.2d 1017, 1021 (Ariz. Ct. App. 1986) (same).

[8] *Goldberg v. Pac. Indem. Co.*, 2009 WL 1327528, *2 (D. Ariz. May 13, 2009) ("A claim can have merit even if it does not succeed.").

[9] *See, e.g.*, *Prize Energy Resources, L.P. v. Santa Fe Pac. R.R.*, 2009 WL 1804986, *3 (D. Ariz. June 24, 2009); *See Rsui Idem. Co. v. Assoc. Elec. & Gas Ins. Servs.*, 2008 WL 6811837, *1-*2 (D. Ariz. Mar. 7, 2008); *Lamparella*, 109 P.3d at 967; *Stuart v. Ins. Co. N. America*, 730 P.2d 255, 262 (Ariz. App. Ct. 1986).

Evans argues that when a party prevails on summary judgment, this factor weighs heavily in its favor.  Although in

This is consistent with one of the policies underlying § 12-341.01(A), the discouragement of frivolous litigation. *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 930 (Ariz. Ct. App. 1983) (*citing Price v. Price*, 654 P.2d 46, 48 (Ariz. Ct. App. 1982)).

Although the Court granted summary judgment for Evans on both of First Penn's claims, neither claim was meritless or frivolous.  As Evans's counsel noted in a letter to the Court, this case raised a number of "unresolved questions of state law."[10]  Letter from Paul S. Caiola, Esq. and Lee H. Ogburn, Esq., Oct. 21, 2005 (Paper No. 20).

---

*Mardian Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 735552 (D. Ariz. March 6, 2007), the defendant obtained an award of fees after prevailing on summary judgment partly because the plaintiff's claims were meritless.  The court nowhere stated that its assessment of the merits of plaintiff's case was affected by the defendant's having been granted summary judgment.  A party's loss on summary judgment--or even on a motion to dismiss--does not necessarily mean its claims were meritless or that an award of fees is appropriate.  *See, e.g.*, *Lamparella*, 109 P.3d at 967 (summary judgment); *Mikkelsen ex rel. Mikkelsen v. Arch Specialty Ins. Co.*, 2005 WL 2886019, at *2 (D. Ariz. Nov. 2, 2005).

[10] These included:

> (1)   Absent consent to rescission, is an insurer required to initiate or defend a lawsuit within two years after issuance of a life insurance policy within the meaning of the Arizona contestability statute and the contestability clause in the Policy?

14

In the Memorandum Opinion granting summary judgment, Judge Davis noted that the "case present[ed] issues of first impression under Arizona law."[11]  On First Penn's claim for rescission based on material misrepresentation, the Court stated that there was "no genuine dispute of material fact as to the nature and character of the [insured's] scheme to defraud . . . [or] as to the specifics of the fraud practiced upon First Penn." *First Penn*, 2007 WL 1810707 at *1.  Although the Court held that First Penn's claim was time-barred, the Court "would [have] conclude[d] as a matter of law . . . [that the insured]

---

    (2)  May an insurer raise "lack of insurable interest" as a claim or defense after expiration of the two-year contestability period?

    (3)  Should the existence of an insurable interest be determined as of the date on which a policy was initially procured or the date on which the policy was reissued for a different term?

    (4)  Does Arizona's insurable interest statute preclude a lack of insurable interest claim where a policy is procured by the insured on his own life and there is no agreement in place when the policy is issued to assign the policy to a third party?

Letter from Paul S. Caiola, Esq. and Lee H. Ogburn, Esq., Oct. 21, 2005 (Paper No. 20).

[11] Although the novelty of the issues in the case is considered under another *Warner* factor, courts often address novelty in considering whether claims or defenses were meritless.  *See, e.g., Prize Energy*, 2009 WL 1804986, at *3; *Mikkelsen*, 2005 WL 2886019, at *2.

committed a fraudulent representation material to First Penn's decision to issue the policy[.]" *Id.* at *4 n.8.

The Court granted summary judgment for Evans based on its prediction that the Arizona Supreme Court would construe Ariz. Rev. Stat. § 20-1204[12] as requiring a policy to be contested by judicial action--rather than by notice of rescission and tender of premiums--within two years of its issue. *Id.* at *1, *7. First Penn's contention that only notice was required found some support in the leading Arizona Supreme Court case, *National Life & Casualty Insurance Company v. Blankenbiller*, which stated (albeit in *dicta*) that to avoid the bar of an incontestability provision, an insurer need only "take such action as will protect its rights" within the limitations period.  360 P.2d 1030, 1032 (Ariz. 1961).  Judge Davis explained, "[a]ny commonsense understanding of this language would comfortably encompass an insurer's use of a letter (accompanied by a tender of premiums plus interest) giving notice that the policy was rescinded." *First Penn*, 2007 WL 1810707 at *5.   However, because the language was *dicta*--and the rule followed by the majority of other states required judicial action--Judge Davis

---

[12] Section 20-1204 requires insurance policies to contain a provision that "the policy . . . shall be incontestable, except for the nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two years from its date of issue."

16

held that the Arizona Supreme Court would likely hold First Penn's actions insufficient to avoid the incontestability provision. *Id*. at *7. It cannot be said that First Penn's misrepresentation claim--which likely would have survived summary judgment but for Judge Davis's resolution of a matter of first impression under Arizona law--was meritless.

First Penn's claim for rescission based on lack of insurable interest was not as strong as its misrepresentation claim, but it was not meritless. As the Court explained, "under Arizona law, whe[n] the insured is working together with an assignee to purchase a policy on his or her own life, but the circumstances indicate that the assignee is the real purchaser of the policy, then there is a lack of an insurable interest." *Id*. at *4 n.7 (*citing McKee v. Penick*, 947 F.2d 1403, 1405 (9th Cir. 1991)). Although First Penn did not have evidence that the insured has conspired with his assignee to "viaticate"[13] his policy, there was evidence that he had purchased the policies in bad faith, *i.e.*, with the intent to viaticate them. There was no case under Arizona law that had addressed whether this bad

---

[13] A "viatical" or "viatical settlement" is "an investment contract pursuant to which an investor acquires an interest in the life insurance policy of a terminally ill person . . . at a discount of 20 to 40 percent, depending on the insured's life expectancy." *SEC v. Life Partners, Inc.*, 87 F.3d 536, 537 (D.C. Cir. 1996). Upon the death of the insured, "the investor receives the benefit of the insurance." *Id*.

faith defeats the purchaser's insurable interest.[14]   Although the majority of jurisdictions that have decided the issue have held that the assignee must be involved in obtaining the policy to eliminate the insurable interest, Judge Davis noted that at least one jurisdiction has found that the assignment to one without an insurable interest in the insured's life violates public policy if "at the time the policy was taken out, the insured intended to make such assignments." *Home Life Ins. Co. of N.Y. v. Masterson*, 21 S.W.2d 414, 416 (Ark. 1929).

First Penn's claims were not meritless or frivolous. Accordingly, this factor weighs against an award of fees.

> b. Whether litigation could have been avoided or settled

It appears that both parties made good faith settlement offers, but were unable to reach an agreement that would have avoided litigation.  Given the complex and novel legal issues-- and serious underlying allegations of fraud--it is not surprising that a settlement was not reached.  Both parties had tenable positions advanced by skillful counsel.  This factor is neutral.

---

[14] In *McKee v. Penick*, the Ninth Circuit (applying Arizona law) did not reach the question because there was no genuine issue of material fact about whether the policy was procured in bad faith.  *See McKee*, 947 F.2d at 1405.

  c. Whether assessing fees would cause an extreme
     hardship

First Penn concedes that assessing fees against it would

not create an extreme hardship. Accordingly, this factor weighs

in favor of awarding fees.

  d. Whether Evans prevailed with respect to all
     relief sought

Evans was awarded summary judgment on both of First Penn's

claims.  Although, as First Penn notes, Evans's motion for

reconsideration--in which it requested that the Court fix the

benefits payable under the policies--was denied, this factor

weighs in favor of awarding fees.

  e. Whether the legal question was novel

As discussed above--and as acknowledged by Evans's counsel-

-this case involved novel issues under Arizona law.  Courts

applying the *Warner* factors frequently give great weight to the

novelty of the claims or defenses in the case.[15]  This is

---

[15] Indeed, many recent decisions denying attorneys' fees have
been based solely on the presence of novel issues. *Tri-Star
Theme Builders, Inc./PCL Constr. Servs.*, 653 F. Supp. 2d at 982
(denying petition based solely on the novelty of the issues in
the suit); *Layne*, 707 P.2d at 967 (affirming denial on same
basis); *Rowland*, 20 P.3d at 1168 (same); *Great W. Bank & Trust
Co.*, 718 P.2d at 1021 (same). *Tri-Star Theme Builders* is an
illustrative case.  At issue was the meaning of a term in an
insurance policy, which presented a "matter of first impression"
under Arizona law. *Tri-Star Theme Builders, Inc./PCL Constr.
Servs.*, 653 F. Supp. 2d at 982.  Although the court granted
summary judgment for the defendant, it denied the defendant's

consistent with § 12-341.01(A)'s policy to discourage meritless cases.  This factor weighs heavily against awarding fees.

> f. Whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees

Courts applying this factor often focus on the size of the award requested.[16]  Although Evans's request for $555,753.27 in attorneys' fees should be considered in light of the value of the policy First Penn sought to rescind (approximately $2,000,000), awarding such a large fee in a case of first impression would discourage the litigation of tenable claims.  Accordingly, this factor weighs against an award of fees.

On balance, the Court finds that the *Warner* factors weigh against an award of attorneys' fees to Evans.  Accordingly, the fee petition will be denied.

---

petition for attorneys' fees under § 12-341.01(A) because the issue was novel.  *Id*.

[16] *See, e.g.*, *Fulton Homes Corp. v. BBP Concrete*, 155 P.3d 1090, 1097 (Ariz. Ct. App. 2007) (award of $12,000 "not so exorbitant as to discourage meritorious claims"); *Mikkelsen*, 2005 WL 2886019, at *2 (awarding defendants' "considerable attorneys' fee request" of $60,000 would discourage meritorious claims).

III. Conclusion

For the reasons stated above, Evans's motion to alter or amend judgment will be denied; its motion to extend the time for filing will be granted; and its petition for attorneys' fees will be denied.


<u>February 16, 2010</u>
                                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge